IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


JULIA MANNARINO and RON TESKA, )
          Plaintiffs, )
           )
     vs. )      Civil Action No. 08-988
           )
UNITED STATES DEPARTMENT OF )
HOUSING AND URBAN )
DEVELOPMENT and KIM KENDRICK, )
Assistant Secretary for Fair Housing and )
Equal Opportunity, )
          Defendants. )

MEMORANDUM OPINION

Plaintiffs, Julia Mannarino and Ron Teska, proceeding pro se, bring this action against

Defendants, the United States Department of Housing and Urban Development ("HUD") and

Kim Kendrick, acting in her official capacity as Assistant Secretary for Fair Housing and Equal

Opportunity at HUD, alleging a claim under the Administrative Procedures Act, 5 U.S.C. §§ 701-

06 ("APA"). They seek review of HUD's investigation of the failure of Dunkard Township and

the Pennsylvania Department of Community and Economic Development ("DCED") to comply

with section 3 of the Housing and Urban Development Act of 1968, 12 U.S.C. § 1701u.

Plaintiffs operated a "section 3 business concern" known as Southwestern Community Ventures

("SCV"), which entitled them to priority in the awarding of contracts paid for by Community

Development Block Grant ("CDBG") funds. In 1997, Plaintiffs filed a complaint with HUD

raising the section 3 violations by Dunkard Township and the DCED. HUD did not act on

Plaintiffs' complaint until December 2006, when it issued a determination that Dunkard

Township had violated section 3. In 2008, HUD imposed a resolution against the DCED.

Plaintiffs were dissatisfied with the resolution because the lengthy delay contributed to the

dissolution of SCV and because they contend that the resolution did not "mitigate" the effects of Dunkard Township's actions because it provided only that all sub-recipients in the jurisdictions where SCV qualified as a section 3 business issue pre-bid invitations to SCV and set priority preference to bid proposals submitted by SCV for three years even though SCV had long been out of business. Plaintiffs requested that monetary sanctions be imposed on Dunkard Township, but HUD responded that it had no authority to do so.

Presently before this Court for disposition is a motion to dismiss or, in the alternative, for summary judgment, brought by Defendants. For the reasons that follow, the motion will be treated as a motion to dismiss for lack of subject matter jurisdiction or for failure to state a claim upon which relief could be granted and will be denied.

Facts

Plaintiffs created SCV in 1989 and thus were entitled to priority in the awarding of contracts for housing rehabilitation, housing construction or other public construction projects in Greene County, Pennsylvania. (Compl. ¶ 4.) See 12 U.S.C. § 1701u(d)(2); 24 C.F.R. § 135.36 ("Recipients, contractors and subcontractors shall direct their efforts to award section 3 covered contracts, to the greatest extent feasible, to section 3 business concerns....") Plaintiffs alleged that, when Dunkard Township received CDBG funds in 1996 from the DCED (which in turn received the funds from HUD), the township improperly failed to solicit bids from section 3 business concerns, including SCV. Plaintiffs also alleged that Morgan Township similarly violated section 3.

Plaintiffs filed a complaint with HUD raising a complaint against Dunkard Township on January 28, 1997 and it was refiled on July 21, 1997. (Compl. ¶ 5 & Ex. A.) HUD initially

dismissed Plaintiffs' complaint on April 30, 1998, for lack of jurisdiction, but it notified them on June 23, 1998, that it had reopened its investigation as it had become aware of additional information.  (Pls.' Br. Opp'n Defs.' Mot. Ex. C.)[1]  Plaintiffs alleged that HUD took no further action on its complaint.

On December 20, 1999, Plaintiffs initiated an action in this Court against HUD, HUD Secretary Andrew Cuomo, Morgan Township and the Chairman of its Board of Supervisors (Shirl Barnhart) by filing a motion to proceed in forma pauperis.  This case was docketed at Civ. A. No. 99-2058.  Plaintiffs filed their complaint on January 11, 2000, and they amended it on August 21, 2000.  Plaintiffs alleged that HUD failed to ensure Morgan Township's compliance with section 3 of the Act (Count I); that Morgan Township failed to comply with its obligations under the Act thereby depriving Plaintiffs of their rights in violation of 42 U.S.C. § 1983 (Count II); and that Morgan Township breached the contract it had entered into with the Pennsylvania DCED (Count III).

On April 25, 2000, Plaintiffs filed another action, this one against HUD, Cuomo and Dunkard Township.  This case was docketed at Civ. A. No. 00-796 and an amended complaint was filed on August 22, 2000.  Plaintiffs brought the same claims as alleged in the action involving Morgan Township, namely that HUD failed to ensure Dunkard Township's compliance with section 3 of the Act (Count I); that Dunkard Township failed to comply with its obligations under the Act thereby depriving Plaintiffs of their rights in violation of 42 U.S.C. § 1983 (Count II); and that Dunkard Township breached the contract it had entered into with the

---

[1]        Docket No. 13.

Pennsylvania DCED (Count III).[2]  On August 18, 2000, an order was entered consolidating the cases and closing Civ. A. No. 00-796.[3]

On September 29, 2000, HUD and Cuomo moved to dismiss the amended complaints in both cases.  On December 14, 2000, Judge Ambrose, adopting a report and recommendation filed by the undersigned on November 13, 2000, granted this motion and dismissed the actions as to HUD and Cuomo on the ground that HUD's decision not to take appropriate investigative or enforcement action measures was not reviewable in court because the decision fell within the agency's discretion.  The Court concluded that the regulations specified at 24 C.F.R. § 135.76(e)(1) did not provide adequate guidelines regarding how a determination and investigation should be made, but left the matter to the agency's discretion, and HUD's actions were therefore unreviewable.[4]

On December 20, 2000, Dunkard Township filed a motion for judgment on the pleadings. On March 6, 2001, Judge Ambrose, adopting a report and recommendation filed by the undersigned on February 5, 2001, granted this motion and dismissed the action as to Dunkard Township on the grounds that: 1) the borrowed two-year statute of limitations for § 1983 claims had expired because they received a letter from the township dated January 27, 1997, in which it explained that it would not be soliciting other bids because it was utilizing another firm that had performed adequately in the past, but they did not file suit until December 1999; and 2) Plaintiffs lacked standing to pursue a breach of contract claim against Dunkard Township as a third party

---

[2]      Defs.' Br. (Docket No. 8) Ex. I.

[3]      Docket No. 8 Ex. L.

[4]      Docket No. 8 Exs. M, N.

to the township's contract with DCED.[5]

On July 31, 2001, Morgan Township and Barnhart filed a motion for summary judgment. In an order dated October 19, 2001, Judge Ambrose granted the motion only as to Count III (the breach of contract claim) and denied it as to Count II (the § 1983 claim). Subsequently, Plaintiffs and the remaining defendants (Morgan Township and Barnhart) consented to trial before the undersigned and a non-jury trial was held on April 15, 2002. At the end of the trial, judgment was entered in Plaintiffs' favor in the amount of $16,225.00, plus costs.[6] The defendants appealed, but on May 27, 2003, the Court of Appeals entered an order affirming this Court's judgment.

Meanwhile, Plaintiffs' administrative complaint against Dunkard Township remained pending before HUD. According to HUD's documentation, the case was dismissed a second time on September 17, 2004, but was once again reopened on successful appeal by SCV. Plaintiffs allege that during this lengthy period of time, DCED continued not to support SCV and the business was effectively shut down.[7] Finally, on December 15, 2006, HUD issued a determination that "Dunkard violated 24 CFR § 135.9(b)(2) by failing to provide contracting opportunities, to the greatest extent feasible, to Section 3 business concerns such as your company, [SCV]." (Compl. ¶ 6 & Ex. B.)

---

[5]     Docket No. 8 Ex. J.

[6]     Docket No. 8 Ex. K.

[7]     Plaintiffs note that SCV filed its last income tax return in 2003 and that, during the ten years that HUD was supposedly investigating, Dunkard Township suffered no adverse consequences and continued to receive CDBG funds indirectly through the County's entitlement program. (Docket No. 13 at 8 & Ex. E.)

Plaintiffs allege that the steps of the grievance procedure, as outlined in the regulations, were very slowly followed.  Finally, Assistant Secretary Kim Kendrick attempted an informal resolution in May 2007 by sending them a draft Voluntary Compliance Agreement ("VCA").  (Compl. ¶ 7 & Ex. C.)  On May 30, 2007, Plaintiffs sent a letter to HUD with their comments.  They objected to the fact that the proposed VCA addressed only future violations by Dunkard Township and made no effort to relieve the effects of past violations that resulted in the grievance and finding of non-compliance.  They also noted that the VCA overlooked any responsibility of DCED and erroneously included a space for County officials to sign when they had no involvement in the events underlying the grievance.  (Compl. ¶ 7 & Ex. D.)

Because HUD was unable to obtain the agreement of all parties, it could not complete the VCA and instead it issued an imposed resolution on January 3, 2008.  (Compl. ¶ 8 & Ex. E.)  The imposed resolution required the DCED, *inter alia*, to do the following: 1) train all sub-recipients (including Dunkard Township) receiving section 3 covered funds on the administration and implementation of HUD's section 3 program; 2) submit plans to HUD concerning how it intended to ensure that sub-recipients comply with section 3 requirements; and 3) sponsor training for all communities within its jurisdiction concerning the section 3 program.  The imposed resolution also required that all sub-recipients in the jurisdictions where SCV qualified as a section 3 business issue pre-bid invitations to SCV and set priority preference to bid proposals submitted by SCV for three years.

Plaintiffs received a copy of the imposed resolution and on January 14, 2008, they filed an appeal therefrom.  They noted that the VCA directed compliance by DCED and not Dunkard Township, that SCV had been forced out of business several years before and thus HUD's relief

was no longer a viable option, and that they had not been consulted during the entire investigation. (Compl. ¶ 9 & Ex. F.) On March 3, 2008, Kim Kendrick responded to Plaintiffs' appeal as follows: 1) DCED was the primary recipient of section 3 covered financial assistance and was ultimately responsible for ensuring that the township complied with the statutory and regulatory requirements of section 3; 2) the regulations do not provide for monetary compensation as a kind of relief; and 3) Plaintiffs had submitted comments in response to the draft VCA on May 30, 2007 and HUD had presented them to DCED but was unable to negotiate a voluntary resolution. Kendrick invited Plaintiffs to submit recommendations for alternative types of relief other than monetary compensation. (Compl. ¶ 9 & Ex. G.)

Plaintiffs submitted a letter in response on March 24, 2008, in which they requested a hearing before an impartial decision maker and reiterated the arguments that Dunkard Township was not being required to mitigate its past actions, that they were not consulted during the VCA process and that monetary sanctions are not prohibited by statute or regulations and are therefore permissible. (Compl. ¶ 9 & Ex. H.) On June 16, 2008, Kendrick responded as follows: 1) she stated that neither the statute nor the regulations provide for administrative hearings in conjunction with the investigation or resolution of section 3 complaints and thus their request for a hearing was denied; 2) the HUD Handbook Plaintiffs cited listed several types of relief that "may" be available to a grievant through section 3 conciliation agreements, but provides for monetary compensation only if all parties to the complaint agree and DCED did not; 3) HUD's strategy for the VCA process is to present a draft VCA to all parties for their review and consideration and thus Plaintiffs did have the opportunity to participate in the process; and 4) because neither the section 3 statute nor the implementing regulations expressly cover the award

of monetary compensation as a result of findings of non-compliance in section 3 investigations, HUD is limited to imposing sanctions listed in the regulations, namely "debarment, suspension and limited denial of participation in HUD programs."  (Compl. ¶ 10 & Ex. I) (quoting 24 C.F.R. § 135.76(g).)

Plaintiffs submitted a final letter to HUD on June 20, 2008.  In it, they acknowledged that their administrative remedies through HUD had been exhausted, but reiterated the complaints that Dunkard Township was not being included as a party to the final resolution and that the terms of the imposed resolution would in no way mitigate the effects of Dunkard Township's actions.  (Compl. ¶ 10 & Ex. J.)

Procedural History

Plaintiffs filed this action on July 14, 2008.  As noted, the complaint alleges a claim under the APA based on HUD's failure to comply with is own regulations because:

HUD's imposed resolution, which includes opportunities for future contracts but does not include any monetary compensation to plaintiffs, does nothing to mitigate the consequences of the deficiency as our business no longer exists. HUD staff was very aware of this fact.  No other types of relief were ever suggested/recommended by HUD at any time during the resolution process.

(Compl. ¶ 13.)  They allege that their business's failure "is related to the inexcusably large amount of time HUD has taken to go through the grievance process" and contend that it is impossible for them to re-create their business at this time.  (Compl. ¶ 14.)  They allege that HUD's actions are arbitrary and not in accordance with law.  (Compl. ¶ 15.)  As relief, they seek:

a judgment that enjoins defendant HUD to include monetary compensation to plaintiffs, from recipient Dunkard Township as a result of their noted non-compliance, in the amount of $16,500, to mitigate the lost income to which plaintiffs were entitled plus all court costs and to grant such further and additional relief as may be just and proper.

(Compl. ¶ 17.)

On September 15, 2008, Defendants filed a motion to dismiss or, in the alternative, for summary judgment, citing Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 56. They argue that: 1) there is no subject matter jurisdiction because the APA's waiver of sovereign immunity does not extend to actions for which there is a remedy in court and Plaintiffs could file suit against Dunkard Township seeking monetary compensation; 2) no judicial review of HUD's imposed resolution is permitted because the agency acted within its discretion; 3) res judicata bars this action because the issue of lack of subject matter jurisdiction was raised and found dispositive in both Civ. A. No. 00-796 and Civ. A. No. 99-2058; and 4) HUD cannot direct Dunkard Township to award Plaintiffs monetary damages in any event, and thus the claims fails, whether reviewed under Rule 12(b)(6) or Rule 56 of the Federal Rules of Civil Procedure.

Standards of Review

Dismissal for lack of subject matter jurisdiction is not appropriate on the ground that a complaint fails to state a claim upon which relief can be granted, but only if the right claimed is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." Growth Horizons, Inc. v. Delaware County, Pa., 983 F.2d 1277, 1280-81 (3d Cir. 1993) (quoting Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 666 (1974)). "The party invoking federal jurisdiction bears the burden of establishing" that jurisdiction exists. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

The first issue a court must decide in reviewing a Rule 12(b)(1) motion is whether the challenge to the court's subject matter jurisdiction is a facial or factual attack. "In reviewing a

facial attack, the court must only consider the allegations of the complaint and documents attached thereto, in the light most favorable to the plaintiff.  In reviewing a factual attack, the court may consider evidence outside the pleadings."  Gould Elec., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000) (footnote and citations omitted).  "Facial attacks ... contest the sufficiency of the pleadings, and the trial court must accept the complaint's allegations as true." Turicentro, S.A. v. American Airlines, Inc., 303 F.3d 293, 300 n.4 (3d Cir. 2002) (citation omitted).

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief could be granted must be viewed in the light most favorable to plaintiff and all well-pleaded allegations of the complaint must be accepted as true.  Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976).  The motion cannot be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  See also National Org. for Women, Inc. v. Scheidler, 510 U.S. 249 (1994).  The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Williams, 490 U.S. at 323; Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  The Court of Appeals has stated that:

> To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record....  [In addition,] a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.

Pension Benefit Guaranty Corp. v. White Consolidated Indus., 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).  In addition, "documents whose contents are alleged in the complaint

and whose authenticity no party questions, but which are not physically attached to the pleading may be considered." Pryor v. NCAA, 288 F.3d 548, 560 (3d Cir. 2002). Thus, the Court may examine the documents Plaintiffs attach to the Complaint as well as any documents referenced therein that Defendants have attached to their motion (which are matters of public record in any event), without converting the motion into a motion for summary judgment.

Subject Matter Jurisdiction

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." Darby v. Cisneros, 509 U.S. 137, 146 (1993) (quoting 5 U.S.C. § 702).[8] "[T]he 'right of action' in such cases is expressly created by the [APA], which states that 'final agency action for which there is no other adequate remedy in a court [is] subject to judicial review,' at the behest of '[a] person ... adversely affected or aggrieved by agency action.'" Japan Whaling Ass'n v. Am. Cetacean Soc., 478 U.S. 221, 229 n.4 (1986) (quoting 5 U.S.C. §§ 702, 704). Although the APA does not itself confer subject matter jurisdiction, see Califano v. Sanders, 430 U.S. 99, 107 (1977), the federal question statute, 28 U.S.C. § 1331, confers jurisdiction over a suit that "arises under" a "right of action" created by the APA, see Bowen v. Massachusetts, 487 U.S. 879, 891 n.16 (1988) ("[I]t is common ground that if review is proper under the APA, the District Court ha[s] jurisdiction under 28 U.S.C. § 1331."). Because § 1331 confers jurisdiction on the district courts, a suit that arises under the APA is properly brought in district court. See Suburban Mortgage Assocs., Inc. v. U.S. Dep't Hous. & Urban Dev., 480 F.3d

---

[8] In Darby, the Supreme Court held that, in light of § 704, courts may not require exhaustion of administrative remedies upon appeal from final agency action, except where exhaustion is expressly required by statute or rule. Id. at 147.

1116, 1122 (Fed. Cir. 2007); Trudeau v. Federal Trade Comm'n, 456 F.3d 178, 184-85 (D.C. Cir. 2006).

Sovereign Immunity

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." United States v. Mitchell, 463 U.S. 206, 212 (1983). "Sovereign immunity is jurisdictional in nature." FDIC v. Meyer, 510 U.S. 471, 475 (1994).

The APA contains a broad waiver of sovereign immunity:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided,* That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance.

5 U.S.C. § 702. Plaintiffs seek relief in the form of an injunction, and there is no doubt that § 702 "waives the Government's immunity from actions seeking relief 'other than money damages.'" Department of Army v. Blue Fox, Inc., 525 U.S. 255, 260-61 (1999).

However, the waiver is limited by a provision that only permits judicial review of "final agency action for which there is no other adequate remedy in court." 5 U.S.C. § 704. Defendants contend that Plaintiffs have another remedy–they can sue Dunkard Township for violating section 3. Therefore, they maintain that the APA's waiver of sovereign immunity does not extend to this situation.

In Turner v. Secretary of the United States Department of Housing and Urban

Development, 449 F.3d 536 (3d Cir. 2006), cert. denied, 127 S.Ct. 998 (2007) ("Turner II"), the

plaintiff, Deanna Turner, had brought a complaint with HUD alleging that she was the victim of

various discriminatory housing practices in which her landlord ("Crawford Square") violated the

Fair Housing Act ("FHA"). Prior to and after filing her complaint with HUD, Turner was

involved in proceedings before the Court of Common Pleas of Allegheny County, Pennsylvania,

stemming from Crawford Square's attempts to evict her and her attempts to thwart the eviction.

Although Turner responded to Crawford Square's suit with counterclaims, she did not raise FHA

claims. After a four-day trial, the Court of Common Pleas found in favor of Crawford Square,

rejecting all of Turner's claims and defenses on the merits. After the state court adjudication,

HUD sent Turner a "Determination of No Reasonable Cause" in which it explained that, based

on the evidence obtained during its investigation, it concluded that reasonable cause did not exist

to support her FHA claims. HUD enclosed with its letter a "determination" on which it based its

decision in which it explained that the investigation should be dismissed under the legal doctrine

of res judicata, predicated on the state court proceedings because HUD concluded that this

constituted a successful defense against the complaint.

Nevertheless, HUD informed Turner that she could sue Crawford Square directly. She

brought suit in federal court against both her landlord and its management company

("McCormack Baron") for violating the FHA. The district court granted summary judgment for

the defendants based on the Rooker-Feldman doctrine.[9] Meanwhile, Turner also brought suit

---

[9] In a separate appeal decided the same day as Turner II, the Court of Appeals rejected the district court's application of the Rooker-Feldman doctrine. However, the court affirmed the

(continued...)

against HUD, alleging that it had failed to undertake certain mandatory duties affecting her interests that the FHA and its implementing regulations imposed on it. Specifically, Turner alleged that HUD's dismissal of her complaint based on res judicata principles violated the statutory mandate requiring it to complete an investigation and determine whether there was reasonable cause to believe that she had been the victim of discriminatory practices. Turner claimed that HUD completed its investigation but wrongfully withheld the mandated determination of whether there was reasonable cause to believe that there were discriminatory housing practices.

The district court dismissed Turner's action against HUD on the ground that the APA did not include a provision from which the court could find a basis for allowing judicial review of HUD's disposition of Turner's complaint, specifically because Turner had an adequate remedy in court, namely she could sue Crawford Square and McCormack Baron for violating the FHA.[10] On appeal, the Third Circuit affirmed. The court observed that section 813 of the FHA authorizes private suits against perpetrators of allegedly discriminatory practices even if HUD renders a determination that there was no reasonable cause to believe that there had been discrimination. 42 U.S.C. § 3613(a)(2). Thus, the court concluded that section 813 provided

---

[9](...continued)
dismissal of the case on the alternative ground that Turner's action against Crawford Square and McCormack Baron was barred under Pennsylvania's doctrine of res judicata. Turner v. Crawford Square Apts. II, L.P., 499 F.3d 542 (3d Cir. 2006) ("Turner I").

[10]     In addition, the district court noted that there was a "strong presumption" against judicial review of agency decision concerning whether to undertake enforcement actions and that the Rooker-Feldman doctrine barred the suit. The Court of Appeals did not address the presumption argument, but as in Turner I, it rejected the district court's application of Rooker-Feldman. Id. at 540 n.6.

Turner with another "adequate remedy" and therefore she could not bring suit in court against

HUD. Id. at 540.

Significantly, the court held that Turner was not deprived of her adequate remedy merely

because the district court had dismissed her complaint against Crawford Square and McCormack

Baron, a decision the Court of Appeals upheld on appeal in Turner I. The court stated that:

> In this regard we agree with the Court of Appeals for the First Circuit which held
> that "[a] legal remedy is not inadequate for purposes of the APA because it is
> procedurally inconvenient for a given plaintiff, or because plaintiffs have
> inadvertently deprived themselves of an opportunity to pursue that remedy."
> Town of Sanford v. United States, 140 F.3d 20, 23 (1st Cir. 1998); see also
> Martinez v. United States, 333 F.3d 1295, 1319-20 (Fed. Cir. 2003) ("The fact
> that the complaint was untimely filed ... does not mean that that court could not
> offer a full and adequate remedy; it merely means that [plaintiff] did not file his
> complaint in time to take advantage of that remedy."); Sable Commc'ns of
> California, Inc. v. FCC, 827 F.2d 640, 642 (9th Cir.1987).
>
> The decisions of the Courts of Appeals for the Federal Circuit in Martinez
> and for the Ninth Circuit in Sable Communications are illustrative of the principle
> that, for purposes of section 813, another remedy is not inadequate merely because
> the complainant cannot pursue it successfully. In each case the court of appeals
> held that the plaintiff had an adequate judicial remedy barring APA review
> notwithstanding the fact that the plaintiff had forfeited the right to that remedy by
> failing to pursue it in a timely manner. Martinez, 333 F.3d at 1320; Sable
> Commc'ns, 827 F.2d at 642. Like the plaintiffs in Martinez and Sable
> Communications, Turner was not successful in her section 813 action under the
> FHA, though for a different reason. Nevertheless, she had an opportunity to bring
> her case and her lack of success in it was attributable to her loss in the underlying
> action between her and Crawford Square and McCormack Baron in the state
> court.

Id. at 541.

Defendants argue that, similarly, Plaintiffs cannot bring this action because an adequate

remedy is available in the form of a suit against Dunkard Township. They note that the

regulations specifically provide that "[n]othing in this subpart D precludes a section 3 resident or

section 3 business concern from exercising the right, which may otherwise be available, to seek

judicial redress directly through judicial procedures." 24 C.F.R. § 135.76(j). As was the case in Turner II, they argue that the remedy is not rendered inadequate merely because Plaintiffs could not pursue the case successfully, that is, it might be dismissed on statute of limitations grounds, as was their case against Dunkard Township filed in 1999.

Defendants' argument is flawed for several reasons. First, they have not identified a means by which Plaintiffs could sue Dunkard Township, as section 813 under the FHA was identified in Turner II. Although both this case and Turner II involve HUD as a defendant, the statute at issue is not the same. Moreover, at least two courts have concluded that no private cause of action is available to enforce § 1701u and that § 1983 may not be used to bring such a claim. Nails Constr. Co. v. City of St. Paul, 2007 WL 423187, at *3-4 (D. Minn. Feb. 6, 2007); Williams v. U.S. Dep't Hous. & Urban Dev., 2006 WL 2546536, at *8-9 & n.4 (E.D.N.Y. Sep. 1, 2006) (no implied right of action under §§ 1701u or 1983, but review would be available under the APA).

Second, Plaintiffs argue that they do not have a claim against Dunkard Township that would preclude this suit against HUD. Rather, this case is based on HUD's extraordinary delay in processing their complaint, which was in part responsible for the collapse of their business, and also on HUD's imposed resolution, which they contend did not "mitigate" the situation because SCV had been driven out of business and the township was not required to remedy its past violation of section 3. In other words, Plaintiffs are appealing HUD's action (and lack of action) to this Court, which is precisely what the APA allows them to do. See 5 U.S.C. § 706(1) (authorizing a court to "compel agency action unlawfully withheld or unreasonably delayed"); § 706(2)(A) (authorizing a court to "hold unlawful and set aside agency action, findings, and

conclusions found to be – arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law”); see also 5 U.S.C. § 555(b) (“within a reasonable time, each agency shall

proceed to conclude a matter presented to it.”).  Dunkard Township is not responsible for HUD’s

delay or the scope of its imposed resolution and thus a claim against the township would not be

“adequate” to address Plaintiffs’ contentions concerning HUD.

Finally, because the APA waives the sovereign immunity of the United States in § 702

without reference to the limitation of “final agency action for which there is no other adequate

remedy in court” in § 704, the waiver applies regardless of whether this provision is met.

Trudeau, 456 F.3d at 186-87.  Therefore, Defendants’ arguments for dismissal based on lack of

subject matter jurisdiction or lack of sovereign immunity are rejected.

Agency Discretion

Defendants argue that no judicial review of HUD’s imposed resolution is available

because the agency acted within its discretion.  The APA and the circumstances under which

sovereign immunity is deemed waived have been described by the United States Supreme Court

as follows:

> The APA’s comprehensive provisions for judicial review of “agency
> actions” are contained in 5 U.S.C. §§ 701-706.  Any person “adversely affected or
> aggrieved” by agency action, see § 702, including a “failure to act,” is entitled to
> “judicial review thereof,” as long as the action is a “final agency action for which
> there is no other adequate remedy in a court,” see § 704.  The standards to be
> applied on review are governed by the provisions of § 706.  But before any review
> at all may be had, a party must first clear the hurdle of § 701 (a).  That section
> provides that the chapter on judicial review “applies . . . except to the extent that
> -- (1) statutes preclude judicial review; or (2) agency action is committed to
> agency discretion by law.”

<u>Heckler v. Chaney</u>, 470 U.S. 821, 828 (1985).[11]

Defendants argue that because the contested agency actions at issue here are ones committed to agency discretion and because there are no standards by which the Court may assess whether HUD abused its discretion, § 701(a)(2) of the APA precludes judicial review.

To support their position, Defendants rely principally on the United States Supreme Court's decision in <u>Chaney</u>, wherein it addressed the question of when a decision of an administrative agency to exercise its discretion not to undertake certain enforcement actions is subject to review under the APA. The plaintiffs in <u>Chaney</u> were prison inmates who had been sentenced to death by lethal injection and who had petitioned the Food and Drug Administration ("FDA") to take various investigative and enforcement actions to prevent the State from using drugs that had not been approved for human execution to carry out their sentences. The inmates claimed that, because the drugs were not approved for human executions, using them for that purpose violated the Food, Drug and Cosmetic Act ("FDCA"). The FDA declined to take the requested investigatory and enforcement actions stating that, while the FDA's jurisdiction in this area was unclear, it should not be exercised to interfere with state criminal judicial systems and citing to its "inherent discretion to decline to pursue certain enforcement matters." <u>Id.</u> at 824. Relying on the APA as providing subject matter jurisdiction, the inmates then filed suit in federal court seeking review of the FDA's inaction.

Distinguishing between an agency's refusal to take a requested enforcement action and an "affirmative act of approval" and noting that agency decisions to refuse enforcement are

---

[11] It is undisputed that the statute at issue here does not expressly preclude judicial review. <u>See</u> 12 U.S.C. § 1701u(a)(1).

generally unsuitable for judicial review the Court held that "an agency's decision not to take enforcement action should be presumed immune from judicial review under § 701(a)(2)."[12] The Court also found, however, that the presumption may be rebutted "where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." Id. at 832-33.

The Court then looked to the FDCA and found that although the statute provided for enforcement through injunctions, criminal sanctions and the seizure of any offending food, drug or cosmetic article, it also provided only that the Secretary was "authorized" to conduct examinations and investigations and that it provided no indication when an injunction should be sought or when seizures should be made. Id. at 835. Moreover, even though the statute provided that anyone who violates the Act "shall be imprisoned . . . or fined," the Court declined to find that this language mandated criminal prosecution of every FDCA violator particularly where, under the Act, the Secretary may only recommend prosecution. Finally, the Court rejected the plaintiffs' arguments that the law by which to judge the FDA's actions could be found in the FDCA's substantive prohibition against "misbranding" and introducing "new drugs" or in the agency "policy statement" that it considered itself obligated to take certain investigative actions. The Court then concluded that "the Act's enforcement provisions thus commit complete discretion to the Secretary to decide how and when they should be exercised" and that the FDCA did not serve to rebut the presumption that the agency's decision not to institute proceedings was

---

[12] The Court found such review unsuitable given the complicated balancing of administrative factors which are peculiarly within the agency's expertise, the fact that by refusing to act the agency does not exercise its coercive power over an individual's liberty or property rights which courts are usually called upon to protect, and because of the similarity between an agency's refusal to institute proceedings and a prosecutor's decision not to indict. Id. at 832.

unreviewable.  Id. at 835, 837.

This Court relied on Chaney in dismissing Civ. A. No. 99-2058 as to HUD in 2000.
However, this case is distinguishable from the earlier one in several respects.  First, Plaintiffs are
not challenging HUD's decision as to *whether* to investigate their complaint, but rather HUD's
delay and its imposed resolution in the matter after it did investigate.  Thus, Chaney is
inapplicable to this situation.  See Saleem v. Keisler, 520 F. Supp. 2d 1048, 1057 (W.D. Wis.
2007) (noting that "the APA itself provides the appropriate standard of review ('unreasonable
delay'), so Heckler is not instructive.")[13]  Second, unlike the situation in the earlier case, here
there are standards by which HUD is supposed to act, as discussed below.

Res Judicata

Defendants contend that the matter of subject matter jurisdiction was presented and
decided in their favor in Civ. A. No. 99-2058.  Therefore, they argue that the issue cannot be
litigated again in this case.  In re Orthopedic "Bone Screw" Prods. Liability Litig., 132 F.3d 152,
155 (3d Cir. 1997).  However, as explained above, this case differs from the earlier one in
numerous critical respects.  For the reasons explained above, the APA's waiver of sovereign
immunity extends to this case and the matter is not precluded from judicial review because HUD
acted within its "discretion."  Therefore, the issue of subject matter jurisdiction is not barred

---

[13]     Defendants have not separately addressed Plaintiffs' contention that the delay in this case
was unreasonable, nor have they attempted to argue that taking ten years to resolve a complaint
of this nature is appropriate.  Cf. Saleem, 520 F. Supp. 2d at 1058-61 (compelling INS to
adjudicate the plaintiff's application for permanent residence that had languished at the agency
for almost 5 years).  On the other hand, Plaintiffs cannot receive any recovery arising out of
HUD's delay because the statute provides that a court may compel agency action that is
unreasonably delayed and Plaintiffs have received agency action, albeit not in a form that they
found acceptable.

from review in this case based upon what occurred in Civ. A. No. 99-2058.

<u>Failure to State a Claim</u>

Finally, Defendants contend that Plaintiffs have failed to state a claim upon which relief could be granted because HUD has no authority to compel Dunkard Township to pay them monetary damages arising out of the township's failure to comply with section 3. Plaintiffs respond that the regulations do not prohibit monetary damages as a remedy and the relevant Handbook expressly allows for them.

Defendants argue that Plaintiffs point to no statutory authority that contains language mandating particularized enforcement actions when HUD determines that a section 3 violation has occurred, but instead rely on regulatory provisions. Defendants contend that this is inappropriate. However, the Court of Appeals has found that, in addition to the statute itself, any corresponding regulations promulgated by the agency may provide the requisite guidelines. <u>Chong v. Director, United States Information Agency</u>, 821 F.2d 171, 175-76 (3d Cir. 1987). Congress has given the Secretary of HUD authority to promulgate regulations with respect to section 3 of the Act. 12 U.S.C. § 1701u(g). The Secretary in turn has delegated this authority to the Assistant Secretary for Fair Housing and Equal Opportunity. 24 C.F.R. § 135.7.

The regulation at issue provides that:

(a) General. Consistent with the procedures described in § 570.900(b), the Secretary may take one or more of the actions described in paragraph (b) of this section. Such actions shall be designed to prevent a continuation of the performance deficiency; mitigate, to the extent possible, the adverse effects or consequences of the deficiency; and prevent a recurrence of the deficiency.

(b) Actions authorized. The following lists the actions that HUD may take in response to a deficiency identified during the review of a recipient's performance:

(1) Issue a letter of warning advising the recipient of the deficiency and

putting the recipient on notice that additional action will be taken if the deficiency is not corrected or is repeated;

(2) Recommend, or request the recipient to submit, proposals for corrective actions, including the correction or removal of the causes of the deficiency, through such actions as:

(i) Preparing and following a schedule of actions for carrying out the affected CDBG activities, consisting of schedules, timetables and milestones necessary to implement the affected CDBG activities;

(ii) Establishing and following a management plan which assigns responsibilities for carrying out the actions identified in paragraph (b)(2)(I) of this section;

(iii) For entitlement and Insular Areas recipients, canceling or revising affected activities that are no longer feasible to implement due to the deficiency and re-programming funds from such affected activities to other eligible activities (pursuant to the citizen participation requirements in 24 CFR part 91); or

(iv) Other actions which will serve to prevent a continuation of the deficiency, mitigate (to the extent possible) the adverse effects or consequences of the deficiency, and prevent a recurrence of the deficiency...

24 C.F.R. § 570.910.  See also 24 C.F.R. § 135.76(f)(2) ("Any resolution imposed by the Assistant Secretary will be in accordance with requirements and procedures concerning the imposition of sanctions or resolutions as set forth in the regulations governing the HUD program under which the section 3 covered assistance was provided.")

Defendants argue that: 1) § 570.910(a) contains permissive language ("the Secretary *may* take one or more of the actions described in paragraph (b)"); 2) to the extent the regulations mandate goals to be met by HUD, it has done so; and 3) because the regulation does not expressly provide for monetary damages as a remedy, HUD is limited to imposing the sanctions listed in the regulations, namely "debarment, suspension and limited denial of participation in

HUD programs." 24 C.F.R. § 135.76(g). However, they have not supported these arguments with anything beyond statements in a brief.

As cited above, the regulation provides that the Secretary's actions shall be designed to do three things: 1) prevent a continuation of the performance deficiency; 2) mitigate, to the extent possible, the adverse effects or consequences of the deficiency; and 3) prevent a recurrence of the deficiency. 24 C.F.R. § 570.910(a), (b)(2)(iv). Plaintiffs contend that the imposed resolution does nothing to achieve the second goal, mitigation of the adverse effects of the township's actions because SCV is no longer in business, a fact that HUD knew before it drafted the imposed resolution. Defendants do not dispute this point.

Defendants contend that HUD is not permitted to include monetary sanctions in an imposed resolution, but rather such a remedy is only recoverable as part of a VCA, which was not obtainable in this case. Plaintiffs contend that the regulations do not prohibit monetary sanctions. They have submitted a section of HUD's Handbook, in which the following language appears under "Types of Relief":

> The types of relief that may be available to a grievant through the forms of conciliation agreements described above (see items 6. c.-e.) include but are not limited to:
>
> ○ new solicitation of bids/proposals;
> ○ award of contract;
> ○ job training position;
> ○ employment;
> ○ monetary compensation; and
> ○ affirmative action.

(Docket No. 13 Ex. H at H-3.) The reference to items 6(c-e) includes "resolution through conference and persuasion," "conciliation," and, when informal methods of resolution fail, a formal resolution. Id. Defendants argue that these remedies apply only in the case of a voluntary

resolution, not a resolution imposed by the agency. However, their argument is not consistent with the wording of the Handbook.

Based upon the materials in the record, the Court cannot conclude that monetary compensation was not available as a remedy in this matter. Defendants clearly want the Court to defer to their interpretation of the statute. The Supreme Court has held that "legislative regulations are given controlling weight unless they are arbitrary, capricious or manifestly contrary to the statute." Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-44 (1984).

However, HUD has not demonstrated that the regulations support its position in this case, only that they do not preclude it. To the extent that HUD wishes to have the Court defer to its interpretation of the statute, it must present that interpretation in an official form, and not merely as an argument in a brief. Plaintiffs allege that HUD's conclusion was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Defendants have not demonstrated that Plaintiffs' complaint fails to state a claim upon which relief could be granted and the motion to dismiss will be denied.


Dated: November 18, 2008